

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| ETHEL BARRY MASTERS, | ) | No. ED111696 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 19SL-CC05392 |
| | ) | |
| | ) | Honorable Joseph L. Walsh III |
| JACOB DAWSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 2, 2024 |

Opinion

Jacob Dawson (Appellant) appeals from the trial court's judgment in favor of Ethel Barry Masters (Respondent) on her replevin action for five vehicles acquired during a long-term relationship between Respondent and Decedent, Appellant's father. Appellant raises six points on appeal. Points One and Two argue the trial court erred in entering partial summary judgment in favor of Respondent on possession because the trial court lacked jurisdiction. Specifically, Appellant contends the probate division had exclusive jurisdiction because Decedent's estate claimed an ownership interest in the vehicles and was not made a party to the replevin action. Points Three, Four, Five, and Six allege the trial court erred in canceling Appellant's jury trial on damages as a sanction for his nonappearance at a pretrial conference in violation of his constitutional right to a jury trial. We find the trial court properly determined from the summary-judgment record that Respondent was entitled to immediate possession of the vehicles

because ownership passed to her through sole ownership or right of survivorship, such that the vehicles did not belong to Decedent's estate nor was the estate a necessary or indispensable party. Consequently, we deny Points One and Two. However, we find that the trial court infringed on Appellant's constitutional right to have a jury determine damages for the replevin claim when it canceled his jury trial as a sanction for his nonappearance at a pretrial conference. Accordingly, we affirm the partial summary judgment and reverse the final judgment as to damages. We remand the cause to the circuit court to set the issues of actual and punitive damages on Respondent's replevin claim for a jury trial, and for any further proceedings consistent with this opinion.

## Background

This replevin action concerns five vehicles acquired during a long-term relationship between Respondent and Decedent. Respondent claimed sole ownership of one of the vehicles and either sole or joint ownership with Decedent of the remaining four vehicles. The vehicles were stored at Decedent's home and business property.

Following Decedent's death, Respondent sought possession of the vehicles from Appellant, Decedent's son, whom the trial court found had assumed possession of Decedent's home and business property. Respondent initially opened a probate action to acquire the vehicles, but the vehicles were not listed in the estate inventory. Respondent was advised by counsel to file a replevin action against Appellant. When Appellant was unable to be named the personal representative of Decedent's estate, Appellant's mother (Mother) took on the role. Mother filed an exhibit in the probate action listing the five disputed vehicles among other vehicles in a First Amended Inventory on November 21, 2019[1]—the same day that Respondent

---

[1] Mother filed the First Amended Inventory on November 15, 2019, which referenced the subsequently filed exhibit.

2

filed her Petition for replevin, conversion, and unjust enrichment against Appellant. The First Amended Inventory stated with respect to the valuation of all estate vehicles that in the event that Respondent's claims to the five vehicles were resolved in Respondent's favor, the value of Respondent's claim would be subtracted from the total vehicle valuation.

In her Petition for replevin, Respondent alleged she was entitled to immediate possession of the vehicles either as the sole owner or as the joint owner with the right of survivorship at the death of co-owner Decedent. Respondent acknowledged the open probate action and First Amended Inventory. Respondent alleged that Appellant refused to surrender possession of the vehicles. Appellant had filed a petition asking the Director of Revenue (DOR) to declare him as owner of one of the vehicles. Respondent claimed that Appellant fraudulently attempted to obtain title in his petition to DOR by changing one digit of the vehicle's VIN (vehicle identification number). Respondent further alleged that Mother amended the estate inventory to add the disputed vehicles at Appellant's behest despite Appellant having actual knowledge that the vehicles were either wholly owned by Respondent or owned by her in joint tenancy with Decedent.

Appellant moved to the dismiss Respondent's replevin action on the basis of the pending action doctrine pursuant to Rule 55.27(a)(9),[2] arguing that the probate action constituted a pending action between the same parties for the same cause. The trial court denied the motion and directed Appellant to file his answer, in which he disputed ownership of four of the vehicles and conceded Respondent's ownership of one vehicle (the 1970 Porsche).

Respondent served Appellant with a request for admissions. Appellant did not respond to the request for admissions. The admissions included the following statements: (1) Appellant had

---

[2] All Rule references are to Mo. R. Civ. P. (2023), unless otherwise indicated.

the vehicles in his exclusive possession, custody, or control; (2) Respondent's exhibits pertaining to title and ownership of the vehicles were true and accurate copies and Appellant was aware of no other subsequent title documents; (3) Appellant was not involved in the purchase of the vehicles and was not listed on any of the titles; (4) Appellant was not aware of any document purporting to pass the title of any of the vehicles to him by Decedent; (5) Appellant's retention of the vehicles was done without justification or excuse, in that he knew he had no legal title to the vehicles; and (6) Respondent was entitled to possession of the vehicles. Pursuant to the trial court's orders, Appellant released the 1970 Porsche to Respondent and submitted to an inspection of the remaining four vehicles.

In August of 2021, Respondent moved for partial summary judgment on her entitlement to possession of the remaining four vehicles. To support her uncontroverted statement of facts and prove her claims of superior title, her entitlement to possession, and Appellant's current possession, Respondent submitted an affidavit attesting to ownership and referenced the exhibits of the certificates of title and bills of sale of the vehicles. Respondent also attached her unanswered request for admissions and argued that Appellant's failure to respond resulted in the facts therein being admitted pursuant to Rule 59.01.

Appellant did not timely respond to the summary-judgment motion under Rule 74.04(c). Appellant sought leave from the trial court to untimely file responses to both the request for admissions and the summary-judgment motion, which the trial court granted. Appellant subsequently filed a response to Respondent's statement of uncontroverted facts, which was his sole summary-judgment filing. Appellant supported each of his denials by referring to attached exhibits, including Exhibit D, which purported to contain his response to the request for admissions that he reasoned negated the legal justification for deeming the statements admitted.

4

However, no Exhibit D was filed with the trial court and, as such, the statements in the request for admission were deemed admitted into the record. Additionally, Appellant referenced a pending petition for discovery of the assets in the probate estate, but no such petition had been filed.

Following a hearing, the trial court entered an order of partial summary judgment in favor of Respondent on November 2, 2021 (Partial Summary Judgment). The trial court determined that there were no genuine issues of material fact and that Respondent demonstrated the legal right to possession of the vehicles by virtue of their nonprobate transfer to her. The trial court reserved the issue of damages for a bench trial. The trial court ordered Appellant to immediately surrender the four vehicles to Respondent.

Appellant did not immediately surrender the vehicles. On the date agreed upon for Respondent to take possession, Appellant denied access to the vehicles by barricading them to prevent towing. Appellant's then-attorney subsequently sought and was granted leave to withdraw. Respondent moved for the trial court to hold Appellant in contempt for failing to turn over possession of the vehicles in compliance with the order of Partial Summary Judgment. Respondent alleged that after counsel for both parties agreed to facilitate recovery of the vehicles, Appellant refused to surrender the vehicles through various means, including making himself unavailable at the agreed-upon dates, avoiding communication, blockading the vehicles to prevent their towing, hiding the keys, along with other conduct that Respondent alleged was intentionally violative of the trial court's orders. Subsequently, Appellant retained new counsel, and Respondent's contempt motion came before a different division of the circuit court, where the motion was denied.

5

Respondent obtained writs of replevin, which were executed by the Sheriff of St. Louis County. Appellant's then-counsel sought and was granted leave to withdraw. Several months later, new counsel entered for Appellant and moved for a continuance. The trial court scheduled a bench trial on damages, then Appellant filed his demand for a jury trial on damages.

The trial court set the cause for a jury trial on February 27, 2023 with a pretrial conference to be held on February 23, 2023. A copy of the order was sent to all attorneys of record. Appellant's then-attorney sought leave to withdraw, and his motion to withdraw—attached to an email received by Appellant—noted the upcoming dates of the pretrial conference and trial. Although Appellant received and read the body of the email indicating his then-attorney's intent to withdraw from representation, Appellant did not open the attachment to read the motion. On the same date, Appellant's attorney moved for a trial date continuance. Following a hearing on January 31, which Appellant did not attend, the trial court granted the attorney's withdrawal motion and denied a trial continuance.

On February 23, 2023, Appellant failed to appear at the scheduled pretrial conference. The trial court issued a memorandum and order (the February 2023 Order) stating that Respondent appeared and that Appellant failed to appear and was "therefore adjudged in default" and that "the jury trial scheduled for Monday, February 27, 2023, is therefore canceled." The trial court ordered Respondent to file an affidavit as to damages by the end of the next day, along with proposed findings for final judgment.

The docket contains no other entries until March 1, 2023, which states "Tried by Court–Civil" and "Judgment Entered." In this appeal, the parties attested at oral argument that no one appeared before the trial court on that date. The trial court entered final judgment (Final Judgment) in favor of Respondent on her replevin claim and awarded damages and costs on the

6

basis of her affidavit. In finalizing its order of Partial Summary Judgment, the trial court noted that two of the vehicles were solely owned and titled to Respondent, while the other three vehicles had been jointly owned and titled to Respondent and Decedent and thus passed to Respondent outside of probate by operation of law via right of survivorship. The Final Judgment awarded damages and costs. Specifically, the Final Judgment awarded $83,035.41 in actual damages for the vehicles' loss of value and use in wrongful retention. The trial court further assessed $83,035.41 in punitive damages, which the trial court held by clear and convincing evidence was sufficient to punish Appellant for his contemptuous conduct during the proceedings and to deter like conduct from others similarly situated.

Once again, Appellant retained new counsel and moved for a new trial under Rule 78.01. Appellant also moved to vacate, amend, or modify the Final Judgment under Rule 75.01. Following a hearing, the trial court denied both motions. Appellant now appeals.

Standards of Review

*Summary Judgment*

"Summary judgment practice in Missouri is governed by Rule 74.04 and this Court's decision in *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993)." *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020). We review a trial court's grant of summary judgment de novo without deference to the trial court's determination. *Id.* at 115 (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011), *abrogated on other grounds* by *Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, (Mo. banc 2023)). "We will affirm the trial court's summary judgment on any ground supported by the record, whether relied upon by the trial court or not." *Weber v. Fed. Home Loan Mortg. Corp.*, 675 S.W.3d 728, 732 (Mo. App. E.D. 2023) (quoting *Bray v. Wells Fargo Home Mortg., Inc.*, 654 S.W.3d 732, 739 (Mo. App. E.D. 2022)).

7

Summary judgment is properly granted "if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Fotoohighiam*, 606 S.W.3d at 115 (quoting *Goerlitz*, 333 S.W.3d at 452). "A material fact in the context of summary judgment is one from which the right to judgment flows[,]" and "[o]nly genuine disputes as to material facts preclude summary judgment." *Id.* (quoting *Goerlitz*, 333 S.W.3d at 453). We review the summary-judgment record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Id.* at 116 (quoting *Goerlitz*, 333 S.W.3d at 453). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* (quoting *Goerlitz*, 333 S.W.3d at 453). "Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Id.* at 117 (internal quotation omitted). "In addition, the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial." *Id.* at 116 (citing Rule 74.04(c)(2), (c)(4)). "Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are deemed admitted." *Id.* (internal quotation omitted).

*Judgments in Bench-Tried Cases*

We review judgments in a court-tried case under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Additionally, we review de novo any questions of law, including constitutional interpretation, decided in a court-tried case. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (internal citation omitted). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (internal quotation omitted).

8

We review a trial court's order sanctioning a party for an abuse of discretion. *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017) (citing *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. banc 2014)). "A trial court abuses its discretion only when its ruling 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *Lewellen*, 441 S.W.3d at 149).

Discussion[3]

Because Appellant's Points One and Two both relate to the trial court's authority to hear and decide the motion for partial summary judgment, we analyze these points in tandem. Inasmuch as Points Three through Six involve related points of law concerning Appellant's constitutional right to a jury trial, we address them together for ease of understanding.

*Points One and Two—Partial Summary Judgment was Properly Entered*

In Points One and Two, Appellant contends the trial court erred in entering Partial Summary Judgment in favor of Respondent for possession on her replevin claim because the trial court lacked jurisdiction. As a threshold issue, Respondent alleges that these points were not preserved for appellate review because neither issue was raised during summary judgment. Appellant counters that either the points present jurisdictional claims, that can be raised for the first time on appeal, or they were preserved in his motion for new trial. Although Appellant

---

[3] We have a duty to determine *sua sponte* whether we have jurisdiction to hear an appeal, including whether the appeal is taken from a final judgment that fully adjudicates a distinct judicial unit. *Fulton v. Drive Rite, LLC*, 676 S.W.3d 498, 500 (Mo. App. E.D. 2023) (citing *Energy Mkt. 709, LLC v. City of Chesterfield*, 614 S.W.3d 643, 647 (Mo. App. E.D. 2020)). The parties do not identify where in the record, if anywhere, Respondent voluntarily dismissed the other counts in her Petition for conversion and unjust enrichment, nor does the Final Judgment explicitly mention or deny those counts. However, "Missouri courts recognize that where a judgment, by implication, carries with it another finding, the implied finding will be sustained, even if it is not specifically mentioned." *Topping Ests. v. Spalitto Living Tr.*, 680 S.W.3d 144, 153 (Mo. App. E.D. 2023) (citing *Bray*, 654 S.W.3d at 738). We find the Final Judgment is final for appeal because it impliedly denied the other counts as alternative remedies when it issued judgment in favor of Respondent on the replevin count.

9

failed to raise the points during summary judgment, we find the points were adequately preserved for review because they were brought before the trial court in a post-judgment motion.

The order of Partial Summary Judgment is interlocutory in nature, a nonfinal order, and as such there is no requirement to file a motion to preserve the issue for appeal. Although not required to do so in a court-tried case, Appellant did file a timely Rule 78.01 motion for new trial after the trial court entered Final Judgment. *See* Rule 73.01(d) ("[A] party may, but need not, file a motion for new trial or a motion to amend the judgment or opinion, or both, as provided by Rule 78.04."); Rule 78.01 ("The [trial] court may grant a new trial of any issue upon good cause shown . . . on all or part of the issues after trial by jury, court or master."); Rule 78.04 ("Any motion for a new trial and any motion to amend the judgment or opinion shall be filed not later than thirty days after the entry of judgment.").

In his motion for new trial and accompanying memorandum of law, Appellant challenged the finalized Partial Summary Judgment on the grounds raised in Points One and Two,[4] and the trial court reviewed and denied the motion. *See Schaberg v. Schaberg*, 637 S.W.3d 512, 518 (Mo. App. E.D. 2021) (citing *39 Bell, LLC v. K&K, Inc.*, 584 S.W.3d 823, 828 (Mo. App. W.D. 2019) (noting that a reviewing court generally considers only those claims presented to the trial court)). Thus, Appellant preserved the issues in Points One and Two for our review.[5] *See* Rule 84.13.

---

[4] Respondent claims the issues were only raised in the memorandum of law accompanying the motion, but we find the motion itself adequately placed before the trial court the issues raised in Points One and Two.

[5] Although we find both points preserved for appeal, we caution Appellant that neither Points One or Two raise matters of **subject matter jurisdiction** that are excepted from Rule 84.13's preservation requirements as he maintains. *See* Rule 84.13(a); *Schaberg*, 637 S.W.3d at 519. The Supreme Court of Missouri clarified the distinction between jurisdiction and authority over ten years ago in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). The question of which **division** of the circuit court has authority to hear a particular matter is determined by statute. *See In the Matter of S.J.M.*, 453 S.W.3d 340, 343 (Mo. App. E.D. 2015) (quoting § 472.020) (providing that "[t]he probate division of the circuit court may hear and determine all matters pertaining to probate business"); *see also Albu Farms, LLC v. Pride*, 685 S.W.3d 468, 486 (Mo. App. W.D. 2023) (finding under *Webb* that failure to join a necessary and indispensable party is not an issue of subject matter jurisdiction excepted from

More specifically, in Points One and Two Appellant maintains the trial court lacked authority to rule on the summary-judgment motion either due to the probate division having exclusive authority over the subject vehicles under § 473.013[6] (Point One) or due to the failure to join Decedent's estate as a necessary and indispensable party under Rule 52.04(a) (Point Two). We disagree. Our review of the summary-judgment record shows that Respondent was entitled to immediate possession of the vehicles because ownership passed to her through sole ownership or right of survivorship, such that the vehicles did not belong to Decedent's estate and as a result the estate was not a necessary or indispensable party.

Point One—§ 473.013 Probate Division In Rem Jurisdiction

Appellant first argues § 473.013 deprived the trial court of authority[7] over Respondent's replevin claim because the statute granted the probate division exclusive authority over the disputed vehicles, which he maintains were claimed by the probate estate in its First Amended Inventory. We disagree.

The statute provides: "from the time of first publication of the notice provided in [§] 473.033, the probate division of the circuit court has in rem jurisdiction of all real and personal property of the decedent located within this state." § 473.013. In rem jurisdiction is a type of personal jurisdiction and refers to a court's power to adjudicate matters directed against property. *See Webb*, 275 S.W.3d at 252 n.4. Section 473.013 recognizes the probate division's authority to

---

Rule 84.13's preservation requirements). Because Appellant's Points One and Two concern the authority of the trial court to hear the replevin action under § 473.013 or Rule 52.04, the points do not present questions of subject matter jurisdiction. *See State ex rel. Wratchford v. Fincham*, 521 S.W.3d 710, 713 n.1 (Mo. App. W.D. 2017) ("We recognize that, in light of *Webb*, the issue in this case concerns the respective **authority** of the circuit and probate divisions of the circuit court, rather than the court's constitutionally-defined personal or subject matter **jurisdiction**."). The cases on which Appellant relies to argue otherwise either pre-date *Webb* or do not conflict with *Webb*. *See, e.g,. S.J.M*, 453 S.W.3d at 343; *Heitz v. Kunkel*, 879 S.W.2d 770, 772 (Mo. App. S.D. 1994).

[6] All Section references are to RSMo (2016), unless otherwise noted.

[7] We follow Missouri precedent in interpreting the exclusivity of the probate division to handle probate matters as authority-based and non-jurisdictional. *Wratchford*, 521 S.W.3d at 713 n.1 (citing *Webb*, 275 S.W.3d at 254).

11

adjudicate matters directed against a decedent's property. "Once competent jurisdiction [is] obtained by the probate court it continue[s] exclusively in that court as to all matters pertaining directly to the settlement of the estate until final distribution thereof [is] made." *Black v. Stevens*, 599 S.W.2d 54, 56 (Mo. App. E.D. 1980) (internal citation omitted). "Prior to such final distribution, no other court, not even a court of concurrent jurisdiction could interfere with [the probate division's] actions." *Id.* (internal citations omitted).

Section 473.013 applies only if the property at issue belongs to the decedent.[8] Here, the summary-judgment record established that none of the disputed vehicles belonged solely to Decedent or his estate. The summary-judgment record contained Respondent's affidavit with references to the certificates of title, bills of sale, and the probate estate's First Amended Inventory. The record also included Appellant's binding admissions as to ownership, title, and possession—which resulted from his initial failure to respond to the request for admissions under Rule 59.01 compounded by his subsequent failure to support his Rule 74.04(c)(2) denials with those responses despite being given permission to file them out of time. *See* Rules 59.01(a)–(b), 74.04(c)(2); *Fotoohighiam*, 606 S.W.3d at 116 (internal quotation omitted) (noting a non-movant's denials only stand if they are supported by specific references to discovery, exhibits, or affidavits); *Curry Inv. Co. v. Santilli*, 494 S.W.3d 18, 25 (Mo. App. W.D. 2016) (quoting Rule

---

[8] In *Wratchford*, the Western District of this Court resolved two lines of Missouri Supreme Court precedent regarding the authority of the probate division of the circuit court. In that case, the Court noted that the Supreme Court had generally held that third parties that claim a direct interest in property that was transferred by the decedent via a non-probate transfer are not limited to the remedies available in the probate court. *Wratchford*, 521 S.W.3d at 715–16. Instead, the Supreme Court allowed the plaintiffs in those cases to seek redress through other remedies. *See Jarman v. Eisenhauer*, 744 S.W.2d 780 (Mo. banc 1988) (holding that plaintiff claiming certificates of deposit could seek a declaratory judgment); *Lynch v. Lynch*, 260 S.W.83d 834 (Mo. banc 2008) (allowing plaintiffs to seek an equitable trust). The primary argument in these cases was that the exclusive remedy for parties seeking assets from an estate should be via a § 473.340 discovery of assets action. The Supreme Court rejected those arguments. Although none of these cases discussed § 473.013, all of these cases were arguably subject to its provisions. As a result, we see no reason that the probate court's in rem "jurisdiction" over the property of the estate should prevent Masters from proceeding with a replevin action to obtain her property.

12

59.01(a)–(b) (noting a party's failure to timely answer request for admissions conclusively establishes those facts such that they are no longer subject to dispute)). Appellant does not contest the summary-judgment findings, nor would he prevail in doing so as his admissions were binding in the trial court and on appeal. *See* Rule 74.04(d) (providing for a trial court entering an order of partial summary judgment to establish factual findings that are binding on subsequent proceedings in the case); *see also, e.g.*, *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 894 n.2 (Mo. App. E.D. 2021) (quoting *Empire Dist. Elec. Co. v. Scorse as Tr. Under Tr. Agreement Dated November 17, 1976*, 620 S.W.3d 216, 225 (Mo. banc 2021) ("Once a circuit court enters an order deeming certain facts established for all purposes under Rule 74.04(d), that order is preclusive as to those facts.")). The summary-judgment record established that two of the disputed vehicles belonged solely to Respondent, not Decedent. The other three vehicles were owned jointly by Respondent and Decedent, such that the trial court concluded that ownership passed to Respondent by right of survivorship and did not belong to Decedent's estate. The trial court's legal conclusions are supported by Missouri law, as explained below.

The relevant statutes establishing the presumption for joint tenancy with the right of survivorship for motor vehicles and directing the surviving co-owner and DOR to facilitate title transfer include §§ 301.675,[9] 301.679.1,[10] and 301.681.5.[11] Section 301.681.5(3) provides that

---

[9] "When the director of revenue issues a certificate of ownership for a motor vehicle or trailer in the names of two or more persons, it shall be presumed that ownership of the motor vehicle or trailer is held by the persons shown on the certificate as joint tenants with right of survivorship or as tenants by the entirety if the owners are husband and wife, unless at the time the application for a certificate of ownership is filed with the director of revenue, the application states that ownership of the motor vehicle or trailer is held as tenants in common." § 301.675.

[10] "A certificate of ownership for a motor vehicle or trailer issued in the names of two or more persons that does not show on the face of the certificate that the persons hold their interest in the motor vehicle or trailer as tenants in common, on death of one of the named persons, may be transferred to the surviving owner or owners. On proof of death of one of the persons in whose names the certificate was issued, surrender of the outstanding certificate of ownership, and on application and payment of the fee for an original certificate of ownership, the director of revenue shall issue a new certificate of ownership for the motor vehicle or trailer to the surviving owner or owners; and the current valid certificate of number shall be so transferred." § 301.679.1.

[11] "On proof of death of one of the owners of two or more multiple owners, or of a sole owner, surrender of the outstanding certificate of ownership, and on application and payment of the fee for an original certificate of

13

such transfers upon death of a co-owner are not testamentary. Here, given the facts of ownership, title, and possession established in the summary-judgment record, the two solely-owned vehicles belonged to Respondent outright and the three jointly-owned vehicles would belong not to Decedent's estate but to Respondent through the right of survivorship. Thus, consistent with Chapter 301, RSMo, the trial court did not interfere with property belonging to the Decedent's estate because the vehicles never passed to the estate but instead passed to Respondent by operation of law. *See* §§ 301.675, .679.1, .681.5; *Cook v. Barnard*, 100 S.W.3d 924, 927–28 (Mo. App. W.D. 2003) (finding an estate's personal representative's refusal to inventory assets of a bank account and CDs that passed to him by operation of law did not constitute grounds for his removal where the assets were held as joint tenants with right of survivorship and were not the decedent's property at death subject to probate inventory because the decedent's interest was extinguished at death); *Black*, 599 S.W.2d at 56 (citing § 473.013). Accordingly, the trial court had the statutory authority to decide that Respondent was entitled to possession of the vehicles. Point One is denied.

Point Two—Rule 52.04 Necessary and Indispensable Parties

We turn now to Appellant's second point in which he contends the trial court lacked authority to enter the order of Partial Summary Judgment due to the failure to join Decedent's estate as a necessary and indispensable party under Rule 52.04. On similar grounds as above, we deny the point.

Rule 52.04 governs necessary and indispensable parties. "Under Rule 52.04(a), 'a person may be considered a necessary party if (1) in the person's absence complete relief cannot be

---

ownership, the director of revenue shall issue a new certificate of ownership for the motor vehicle or trailer to the surviving owner or owners[.]" § 301.681.5(1). "The transfer of a motor vehicle or trailer at death pursuant to this section is effective by reason of [§§] 301.675 to 301.682 and [§§] 306.455 to 306.465 and is not to be considered as testamentary, or to be subject to the requirements of [§] 473.087 or [§] 474.320." § 301.681.5(3).

14

afforded or (2) the person claims an interest in the subject matter, and disposition of the matter in the person's absence may impede the protection of that interest or subject the person to multiple or inconsistent obligations.'" *Moore v. Crocker*, 674 S.W.3d 146, 151–52 (Mo. App. E.D. 2023) (internal quotation omitted). If a non-party is deemed to be a necessary party, then the trial court must determine whether that party is indispensable such that the party cannot be feasibly joined "but whose absence is so critical that equity and good conscience will not permit the matter to proceed without that party." *Id.* (internal quotation omitted). Failure to join a necessary party is not fatal to a trial court's authority, but failure to join an indispensable party is fatal. *Id.* (internal quotations omitted) (noting further that failure to join a necessary party must be raised by a timely motion to avoid waiver under Rule 55.27).

Appellant did not object to the failure to join Decedent's estate as a necessary or indispensable party in his motion to dismiss or on summary judgment but instead raised the issue for the first time in his motion for new trial following Final Judgment. Respondent persuasively argues Appellant waived review of this point. *See id.* at 152 n.4 (citing *Empire Dist. Elec. Co. v. Coverdell*, 484 S.W.3d 1, 26 n.28 (Mo. App. S.D. 2015) (noting the 2011 amendment to Rule 55.27(g)(2) suggests a party may waive failure to join even an indispensable party if not raised before adjudication on the merits)). Whether waived or not, Appellant's claim has no merit.

A replevin action is one for possession, not ownership rights. *Green v. Study*, 286 S.W.3d 236, 240 (Mo. App. S.D. 2009) (internal quotation omitted). Recovery in a replevin action depends on the strength of the plaintiff's claim and not the weakness of the defendant's claim. *Id.* (internal quotation omitted). "Even assuming the presence of some third party's interest in the property, such interest would be insufficient to preclude replevin by plaintiff ***as against defendant*** . . .[where] [the defendant] has demonstrated no interest—legal or equitable—

15

in the property." *Phillips v. Ockel*, 609 S.W.2d 228, 232 (Mo. App. E.D. 1980) (citing *First Nat. Bank of Clayton v. Trimco Metal Prods. Co.*, 429 S.W.2d 276, 277 (Mo. 1968)) (emphasis added). Missouri courts have held that even a plaintiff who does not currently hold legal title may recover possession in a replevin action, so long as the plaintiff can show a special property interest establishing a right to possession and the defendant's lack of any such right. *Trimco*, 429 S.W.2d at 277. In this way, replevin was resolved here between Respondent and Appellant irrespective of Decedent's estate, even if the estate claimed an interest in the vehicles, such that the trial court did not err in deciding partial summary judgment without the estate joined as a party. *See Phillips*, 609 S.W.2d at 232 (citing *Trimco*, 429 S.W.2d at 277).

The summary-judgment facts established Respondent's superior ownership and title to the vehicles over Appellant. *See id.* Appellant admitted on summary judgment that he had no legal title to the vehicles, knew of no other title documents than the ones submitted by Respondent or of any documents purporting to pass title to him from Decedent, and that he held current, exclusive possession of the vehicles. Through evidence and Appellant's admissions, Respondent established her entitlement to possession in replevin against Appellant. *See* Rule 74.04(c)(2); *compare Trimco*, 429 S.W.2d at 277 (finding a plaintiff demonstrating superior possessory interest may recover possession in a replevin action despite lacking legal title) *with Roberts Holdings, Inc. v. Becca's Barkery, Inc.*, 423 S.W.3d 920, 928 (Mo. App. S.D. 2014) (distinguishing from *Trimco* where a lessor-plaintiff failed to establish superior possessory interest in a replevin action over multiple parties claiming such interest). Additionally, the First Amended Inventory for Decedent's estate specifically indicated that its claims to the vehicles were subject to resolution of Respondent's claims. The trial court thus had authority to award Respondent possession on summary judgment. We deny Point Two.

16

*Points Three, Four, Five, and Six—Cancelation of the Jury Trial on Damages was Unconstitutional*

Points Three through Six allege a violation of Appellant's constitutional right to a jury trial, as such we analyze these points together. Appellant argues the trial court erred in entering the February 2023 Order and subsequent Final Judgment because the cancelation of Appellant's jury trial on damages was not a recognized waiver or sanction for nonappearance at a pretrial conference and violated Appellant's right to a jury trial under article I, section 22(a) of the Missouri Constitution. We agree.

Missouri law protects the constitutional right to trial by jury. MO. CONST. art. I, § 22(a) ("[T]he right of trial by jury as heretofore enjoyed shall remain inviolate."); *see also* § 510.190.1 ("The right of trial by jury as declared by the constitution or as given by a statute shall be preserved to the parties inviolate."); Rule 69.01(a) ("The right of trial by jury . . . shall be preserved to the parties inviolate."). "The right to a jury trial includes the right to have a jury determine the plaintiff's damages." *Holm*, 514 S.W.3d at 601 (citing *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 639 (Mo. banc 2012); *Lewellen*, 441 S.W.3d at 143). The right to a jury trial is particularly important with respect to punitive damages, which are "a peculiar function of the jury." *Id.* (quoting *Lewellen*, 441 S.W.3d at 143). The right to a civil jury trial on damages is waivable. *Id.* at 600 (citing *Meadowbrook Country Club v. Davis*, 421 S.W.2d 769, 772 (Mo. banc 1967); *State ex rel. Morgan v. Colyer*, 245 S.W.3d 244, 246 (Mo. App. S.D. 2008)).

As a preliminary matter, we respectfully disagree with the Dissent's contention that Appellant did not preserve the issue of his right to a jury trial for review. Appellant preserved his rule-based and constitutional claims at the earliest opportunity following Final Judgment in his timely Rule 75.01 motion to vacate, reopen, correct, amend, or modify the judgment and Rule

17

78.01 motion for new trial. In his motions, Appellant asserted that the trial court abused its discretion by disciplining him for his failure to appear at a pre-trial conference hearing, which resulted in a denial of his right to trial by jury.

In the accompanying memoranda, Appellant cited the relevant Missouri constitutional provision. Moreover, at the motion hearing, Appellant explained in detail the confusing nature of the February 2023 Order. Appellant noted that it was unclear whether the trial court entered the order under Rule 74.05, default judgment, which would not be appropriate as Appellant had filed responsive pleadings. Or whether the trial court penalized Appellant under Rule 62.01, which sets forth pre-trial conference procedures, but does not provide a mechanism for sanctions, in contrast to Rule 61.01, which authorizes sanctions for *discovery* violations.

As is made clear in the following discussion, Rule 69.01 and § 510.190.2 set forth the exclusive method by which a litigant may waive his right to jury trial. Hence, negation of that right by any other mechanism constitutes an abuse of discretion.

This case turns on several well-established principles of civil procedure. First, failure to appear at a hearing or trial does not result in a default judgment under Rule 74.05. *Midwest Clearance Ctrs., LLC v. St. Louis Retail Outlet, LLC*, 679 S.W.3d 157, 164 (Mo. App. E.D. 2023) (explaining that a party who answered and defended an action before waiving a jury trial under Rule 69.01(b)(1) by failing to appear at trial could not be found in default under Rule 74.05). "[A] trial court may enter a default judgment or an interlocutory order of default '[w]hen a party against whom a judgment for affirmative relief is sought has *failed to plead or otherwise defend* as provided by these rules[.]'" *Id.* (quoting Rule 74.05(a), (b)). "[W]here a party has filed a responsive pleading but then fails to appear at a hearing on the case, *a resulting adverse*

18

*judgment is a judgment on the merits even if the court has struck the party's pleadings.*" *Id.* (quoting *Vang v. Barney*, 480 S.W.3d 473, 475 (Mo. App. W.D. 2016)).

Failure to appear at trial results in waiver of trial. Rule 69.01(b)(1); § 510.190.2(1) (codification of the same). "Parties shall be deemed to have waived trial by jury: (1) by failing to appear at the trial; (2) by filing with the clerk written consent in person or by attorney; (3) by oral consent in court . . . [or] (4) by entering into trial before the court without objection." Rule 69.01(b). Rule 69.01(b) and its statutory counterpart § 510.190.2 set forth "the **exclusive** methods of waiver." *Holm*, 514 S.W.3d at 600 (citing *Morgan*, 245 S.W.3d at 246; *Meadowbrook*, 421 S.W.2d at 773) (additional citation omitted). For example, the Western District found that a party waived its right to a jury trial on damages by failing to appear at the damages trial. *Washington v. Sioux Chief Mfg. Co., Inc.*, 662 S.W.3d 60, 76 (Mo. App. W.D. 2022) (citing § 510.190.2(1)); *see also Auto. Leasing Corp. v. Westerhold*, 945 S.W.2d 600, 601, 603 (Mo. App. E.D. 1997) (finding the trial court did not abuse its discretion when it impliedly denied a pre-trial motion to continue the trial by trying the case without a jury when the movant failed to appear at the scheduled trial, thereby waiving his right to a jury trial).

However, failure to appear at a pretrial conference is not equivalent to failure to appear at trial and does not waive the trial. *Cf. State ex rel. Cunningham v. Luten*, 646 S.W.2d 67, 68 (Mo. banc 1983) (finding a party did not waive a jury trial under Rule 69.01(b)(4) and § 510.190.2(4) "by entering into a trial before the court without objection" where the hearing at issue was not a "trial" as contemplated by the waiver rule and statute).[12]

Pretrial conferences are governed by Rule 62.01, which does not provide for waiver of trial as a sanction for failure to appear. *See* Rule 62.01. As Appellant notes, Rule 61.01 provides

---

[12] The parties' discussion of *Brueggemann v. Elbert*, 948 S.W.2d 212 (Mo. App. E.D. 1997), involving failure to appear at trial, rather than at a pretrial conference, is inapposite.

for default orders as sanctions for ***discovery*** violations, and discovery violations are not at issue in this case. *See Carmed 45, LLC v. Huff*, 630 S.W.3d 842, 856 (Mo. App. E.D. 2021) (explaining that Rule 61.01 lists the sanctions available to the trial court when faced with a party's failure to act regarding discovery); *Davis v. Chatter, Inc.*, 270 S.W.3d 471, 479 (Mo. App. W.D. 2008) (specifying that a trial court has discretion to strike pleadings, enter default judgment, and prevent a party from presenting evidence or cross-examining witnesses at a hearing or trial as a sanction for failure to participate in discovery under Rule 61.01). Under Rule 61.01's discovery-violation rules, "[d]efault, though drastic, is appropriate where the party has shown a contumacious and deliberate disregard for the court's authority." *Carmed*, 620 S.W.3d at 856 (internal quotation omitted). Rule 61.01 sanctions "may be entered 'upon motion and reasonable notice[.]'" *Id.* at 861 (quoting Rule 61.01(d)). Nevertheless, Rule 61.01 does not authorize cancelation of jury trial as a sanction.

Lastly, we recognize the inherent powers of a trial court. "A trial court has the inherent power to enforce compliance with its reasonable orders and may, at its discretion, impose sanctions when they are justified, considering the conduct of the parties and counsel." *Mitalovich v. Toomey*, 217 S.W.3d 338, 340 (Mo. App. E.D. 2007) (citing *Foster v. Kohm*, 661 S.W.2d 628, 631 (Mo. App. E.D.1983) (affirming a trial court's award of $1,500 in attorneys' fees as a sanction for failing to appear at a hearing at which the other party appeared and expended effort and money)). However, our recognition of those inherent powers diverges from that of the Dissent to the extent that judicial precedent establishes that such powers are not unlimited but instead face the natural bounds of the rules of the Supreme Court and the provisions of the Constitution. A court must exercise caution in invoking its inherent power to sanction bad faith conduct. *McLean v. First Horizon Home Loan, Corp.*, 369 S.W.3d 794, 801

20

(Mo. App. W.D. 2012). The court must comply with the mandates of due process, both in determining whether the required bad faith exists, and in assessing fees. *Id.* In this case, the court could have conducted a hearing to determine whether Appellant's actions during the litigation constituted bad faith, and if so what sanctions were appropriate. *See id.* The existence of sanctions established by a particular rule or statute do not preclude the inherent power of the court to impose sanctions for bad faith conduct. *Id.* Aside from contractual waiver, "our courts repeatedly have held that § 510.190.1's right to jury trial can be waived only in accordance with § 510.190.2." *Morgan*, 245 S.W.3d at 246 (citing *Meadowbrook*, 421 S.W.2d at 773) (additional citations omitted). "Circuit courts cannot make or enforce local rules that deprive parties of a legal right, or grant the right upon terms more onerous than fixed by law." *Id.* (internal citations omitted) (prohibiting waiver of a jury trial by local rule).

Consequently, in the case at bar, cancelation of a jury trial on damages impermissibly exceeds the trial court's authority to sanction a defendant. *Holm*, 514 S.W.3d at 600–01 (internal citations omitted). "Once the right to a jury trial attaches . . . any legislation or rule of procedure that 'curtails the jury's determination of damages' 'necessarily infringes on the right to trial by jury.'" *Id.* (quoting *Watts*, 376 S.W.3d at 640). The imposition of sanctions, even duly warranted, "does not strip a party of its right to have a jury determine the amount of damages." *Id.* "Even when a defendant defaults in a case or incurs sanctions striking its pleadings and preventing it from participating at trial, there must still be a hearing to prove the plaintiff's damages." *Id.*[13] "Any defendant that has not waived its right to a jury trial can request a jury determine those damages." *Id.* at 602. In *Holm*, even where the appellant mortgage companies

---

[13] A party that defaults on liability under Rule 74.05 is still entitled to a hearing on damages, and the trial court must base any ruling as to damages on the evidence adduced. *Duvall v. Maxey*, 249 S.W.3d 216, 222–223 (Mo. App. W.D. 2008).

21

failed to request a jury trial until the day of trial and further failed to timely submit jury instructions, the Supreme Court held these failures did not waive their right to a jury trial under any of the provisions of § 510.190.2, and thus the trial court could not cancel the jury trial on damages as a sanction. *Id.*

The Supreme Court explained there is no inconsistency between the procedural rules regarding sanctions under Rule 61.01 and the exclusive means for waiver of jury trials under Rule 69.01(b), codified in § 510.190.2. *Id.* at 601. Specifically, "Rule 61.01 is not inconsistent, as it does not expressly permit the trial court to deny the sanctioned party a jury trial." *Id.* Instead, "[i]nterpreting the rule to imply that a jury trial may be withheld as a discovery sanction . . . would put the rule at odds with article I, [§] 22(a) of the Missouri Constitution because such an interpretation would be an impermissible judicial alteration of the constitutional right to a jury trial." *Id.* (citing *Watts*, 376 S.W.3d at 639–42).

Applying these principles to the facts of this case yields only one possible outcome. The trial court decided liability for replevin in its order of Partial Summary Judgment and reserved damages for a bench trial. Appellant requested a jury trial on damages. Appellant then failed to appear at the pretrial conference, and the trial court consequently adjudged him in default, canceled his upcoming jury trial on damages and, with no subsequent hearing, issued final judgment awarding Respondent actual and punitive damages based solely on an affidavit.

Critically, although the Final Judgment is replete with indications of Appellant's contumacious conduct during the proceedings, the record on appeal does ***not*** show any of the following: (1) that Appellant waived his jury trial on damages by failing to appear at trial under Rule 69.01(b)(1); (2) that Appellant was sanctioned for discovery violations under Rule 61.01 by having his evidence or cross-examination limited at a damages hearing; (3) that Respondent's

22

motion for contempt was granted; or (4) that the trial court conducted a bench trial or held a hearing on damages prior to issuing the Final Judgment. *See Holm*, 514 S.W.3d at 600 (internal citation omitted) (observing that dilatory conduct might rise to the level of waiver of rights **other than** the right to a jury trial). These facts contrast with those in which the parties waived their right to a jury trial under one of the provisions of Rule 69.01(b) and § 510.190.2. *See, e.g., Washington*, 662 S.W.3d at 76 (finding an employer waived its right to a jury trial on damages by failing to appear at the damages hearing); *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 555–56 (noting but not deciding that the complaining party may have waived his right to a jury trial by affirmatively participating in a bench trial after failing to provide jury instructions).[14]

We sympathize with the apparent frustration of the trial court with the Appellant's delays[15] and noncompliance with court orders, and we further recognize our deference to a trial court's inherent power to sanction litigants. Nevertheless, canceling a demanded jury trial on damages is a drastic measure that must be supported both by the record and by specific legal authority. The Supreme Court drew a brightline in *Holm* that § 510.190.2 and its counterpart Rule 69.01(b) set forth the **exclusive** means by which a party may waive a jury trial, and held that a trial court cannot otherwise cancel a jury trial on damages as a sanction for a litigant's conduct, because such a sanction violates the constitutional right to have a jury determine

---

[14] Although the Dissent offers *Brancato* as authority for the proposition that a trial court may impose cancelation of a jury trial in the absence of waiver, *Brancato* did not reach the merits of the question, nor did it ignore the role of waiver when speculating what might have occurred in the trial court. 950 S.W.2d at 556–56. *Brancato* dismissed the appellant's complaint that he was improperly denied a jury trial because he failed to comply with the rules of appellate procedure on multiple grounds, including failing to provide a sufficient record. *Brancato* specifically noted the waiver scenario enumerated in Rule 69.01(b)(4)—that a party may waive a jury trial by entering into a bench trial without objection—and observed that "[i]n the absence of a transcript, we have no reliable way of determining whether or not [the appellant] accepted and proceeded, or, objected to the bench trial." *Id.*

[15] The record plainly contravenes Appellant's attribution of his delays solely to his inability to pay his successive attorneys.

damages. *See id.* at 601 (internal citations omitted). Therefore, we must grant Point Four, which is dispositive of the remaining points on appeal. We reverse the trial court's Final Judgment awarding damages and remand the cause for the trial court to set the issues of actual and punitive damages on Respondent's replevin claim for a jury trial.

Conclusion

The judgment of the trial court is affirmed in part and reversed in part. We affirm the summary judgment and reverse the judgment as to damages. We remand the cause to the trial court for further proceedings consistent with this opinion.

_____
Rebeca Navarro-McKelvey, J.

John P. Torbitzky, J., concur.
Thomas C. Clark, II., C.J., dissents in a separate opinion



# In the Missouri Court of Appeals Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| ETHEL BARRY MASTERS, | ) | No. ED111696 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 19SL-CC05392 |
| | ) | |
| | ) | Honorable Joseph L. Walsh III |
| JACOB DAWSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 2, 2024 |

## DISSENT

I dissent from the majority holding that the trial court abused its discretion for cancelling Appellant's jury trial after he failed to appear at a February 23, 2023 court-ordered pretrial conference. I would vote to affirm because Appellant inadequately raised his constitutional argument before the circuit court pursuant to the case law, essentially raising it for the first time on appeal. *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 266 (Mo. banc 2014) (quoting *United C.O.D.*, 150 S.W.3d at 313). Even if he had properly raised his point before the trial court, Appellant waived his right to a jury trial when failing to appear for the court-ordered pretrial conference on February 23. Like my colleagues, I recognize the inviolable right to a jury trial as enshrined in our Missouri Constitution, Article I, Section 22(a). After applying the law to

1

these factual circumstances however, Appellant inadequately raised this issue before the trial court after he voluntarily forfeited this right in my opinion.

When properly arguing a constitutional challenge, "the party must: (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review." *Mayes*, 430 S.W.3d at 266 (Mo. banc 2014) (quoting *United C.O.D. v. State*, 150 S.W.3d 311, 313 (Mo. banc 2004)).

Following the February 23 order and March 1 judgment, Appellant filed a flurry of motions in the trial court but not until March 30-31. I disagree that he properly and adequately raised his constitutional challenge in his multiple post-judgment motions. For example, his verified motion for new trial does not even assert that he was denied his right to a jury trial but rather he claims jurisdiction rests with the probate division as the reason for warranting a new trial. Failing to even mention "jury trial" or the right associated with it, he simply and inadequately asserts the trial court "abused its discretion when it sanctioned Dawson" by entering the February 23 order. His accompanying memorandum of law in support asserts that the trial court cancelled his jury trial as guaranteed under the Missouri Constitution but his reference to Article I, Sec. 22(a), as required under *Mayes* at 266, does not appear in the body of the pleading and is relegated to a single footnote.[1] Among other prerequisites for properly preserving a constitutional challenge, "the party… must designate specifically the constitutional

---

[1] Similarly, his motion to vacate, reopen, correct, amend or modify the judgment and accompanying memoranda inadequately preserve this issue for appeal. Admittedly, his motion eventually asserts that the court abused its discretion when it "deni(ed) him a jury trial" but fails to identify the Missouri Constitution as guaranteeing this right. In his memorandum in support, Appellant mentions sparingly in the body of his pleading that the Missouri Constitution guarantees his right to a jury trial. However, he again buries his reference to Article I, Sec. 22(a) in a footnote.

2

provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself…" *Mayes*, 430 S.W.3d at 266.

When raising his constitutional challenge, Appellant proffers a piecemeal pleading approach which is unpersuasive. In a clear, straightforward manner, *Mayes* offers a road map for preserving this issue on appeal which Appellant fails to follow. Here, the court is forced to pick and parcel among multiple pages of his multiple post-judgment motions to glean the relevant material affecting his constitutional challenge. "[T]o preserve constitutional questions for review on appeal, the constitutional issue must be raised in the trial court at the earliest opportunity, consistent with good pleading and orderly procedure." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008). When Appellant acts inconsistently with "good pleading and orderly procedure," how can we condemn the trial court for failing to grant the requested relief? Since Appellant inadequately asserted the alleged error, our courts and others have steadily held that he waived the claim and is precluded from raising it for the first time on appeal. *Pollard v. Whitener*, 965 S.W.2d 281, 291 (Mo. App. W.D. 1998); *see also Weiss v. Rojanasathit*, 975 S.W.2d 113, 121 (Mo. banc 1998).

Besides violating Missouri case law, Appellant offends the applicable rule which governs post-trial motions. The rule states that "[a]llegations of error based on matters occurring or becoming known after final submission to the court or jury shall be stated specifically." Rule 78.07(a)(3). Appellant does not comply with the rule and is far from specific when arguing the alleged error. He merely mentions his right to a jury trial, complains about the harshness of the court's sanction, refers to the Missouri Constitution sparingly and relegates the applicable constitutional article and section to a footnote.

3

While Appellant dismisses his failure to adequately highlight the error as a de minimis violation, it is a long-standing, valued and meaningful legal concept that the trial court – the recipient of Appellant's criticism – have an opportunity to address the issue and correct the deficiency. *Brandt v. Csaki*, 937 S.W.2d 268, 275 (Mo. App. W.D. 1996) (abrogated on other grounds). Appellant asks our court to both disregard his failure to follow the applicable case law and ignore the relevant court rule. His unreasonable expectation is contrary to the law of "good pleading and orderly procedure," which prompts this dissent among other reasons. *Id.*

Even if Appellant successfully preserved the constitutional question for appellate review, his requested relief still should be denied because he "waived" his right to the jury trial when he failed to appear at the court-ordered pretrial conference on February 23. *Automotive Leasing Corp. v. Westerhold*, 945 S.W.2d 600, 601 (Mo. App. E.D. 1997) (after appellant filed a continuance request three days before a pre-scheduled jury trial and did not appear, the circuit court heard evidence and entered judgment against the absent party, effectively denying the continuance request).

In *Automotive*, the trial court notified the parties on January 16, 1996, that they were the first case set for jury trial on January 22. *Id*. On January 19, the appellant filed a motion to continue the jury trial without a supporting affidavit, claiming he would be transporting his wife to the hospital on January 22. *Id*. After appellant failed to appear for trial, the court essentially overruled the motion for continuance, heard testimony, received exhibits and entered judgment in favor of the respondent. *Id*. In his motion to vacate the judgment and for new trial, the appellant similarly argued that the court wrongly acted in his absence and essentially denied his continuance motion after demanding a jury trial. *Id*. The *Automotive* court upheld the trial court proceeding in the appellant's absence, recognizing "[A] trial court has broad discretion in

4

controlling the docketing and progress of litigation," *Id.* at 603 (quoting *Collins v. Director of Revenue*, 691 S.W.2d 246, 254 (Mo. banc 1985)).

Here, Appellant's conduct is considerably more egregious than the *Automotive* party. As a case pending for over four years and replete with docket entries reflecting Appellant's failure to answer discovery, failure to respond to motions and failure to appear in court, including a court-ordered pretrial conference only days before the scheduled jury trial, this circuit court should be afforded equal deference to control its docket as the *Automotive* circuit court. *Id.* (quoting *Collins*, 691 S.W.2d at 254). Admittedly, Appellant did not appear at a pretrial conference four days before trial and the *Automotive* appellant did not appear the day of trial. However, at least the *Automotive* appellant attempted to notify the court and respondent about his extenuating circumstances and likely absence in advance, and at a point in time similar to this matter's pretrial conference preceding the jury trial. In this matter, Appellant did not make any effort. He simply failed to show up at a court-ordered event, demonstrating his indifference to the court, his opponent and the multiple scheduling considerations required to coordinate a jury trial where the court imposes on multiple citizen volunteers to abandon professional and personal obligations to hear the parties' case.

The February 23 pretrial conference was not an insignificant event. In fact, the court is allowed by rule to order the parties to appear. Rule 62. Undoubtedly, the court intended to address the proposed jury instructions and other pretrial matters like the motions in limine, which were required to be filed no later than one week preceding the trial. Appellant's involvement was critical at the pretrial conference scheduled only days before trial and both the court and his opponent rightly expected him to appear prepared to substantively address the issues affecting this case that had been pending for more than four years. Appellant failed in this expectation and

5

this court should not reward him with yet another opportunity to delay finality. We can recognize the inviolate right to a jury trial while also recognizing that some litigants can abuse this privilege.

Other courts have reached similar conclusions, upholding trial courts for cancelling the jury trial as a sanction for a party's failure to comply with the court's pretrial order. *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 555-56 (Mo. App. E.D. 1997) ("We do not need to determine whether a jury trial was improperly denied as a sanction for Brancato's failure to meet his court-ordered duty to file proper proposed jury instructions with the court. It appears a denial as a sanction would not be error, if that was the explanation."). In my opinion, the trial court here did not abuse its discretion when cancelling the jury trial because the court rightly considered Appellant's collective conduct as his intent to waive his jury trial request, including Appellant's failure to appear at the February 23 pretrial conference.

In summary, I would affirm the circuit court because Appellant waived his right to complain about this matter since he did not effectively raise his constitutional claim before the trial court pursuant to *Mayes*, 430 S.W.3d at 266. Additionally, the circuit court did not abuse its discretion when concluding that Appellant waived his right to a jury trial when he failed to appear at the court-ordered February 23 pretrial conference, only days before his jury trial. More simply, this learned trial court was making best efforts at "controlling the docketing and progress of litigation." *Automotive*, 945 S.W.2d at 603 (quoting *Collins*, 691 S.W.2d at 254).

_____
Thomas C. Clark II, C.J.

6